24 C.C.P.A.(Patents)

**In re BERTRAM.**

**Patent Appeal No. 3784.**

Court of Customs and Patent Appeals.
March 29, 1937.

Thomas E. Robertson, of Washington, D. C., and A. D. Salinger, of Boston, Mass., for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

The instant appeal, according to the reasons of appeal, is from two decisions of the Board of Appeals of the United States Patent Office, affirming the decisions of the Primary Examiner, the first of which held that the subject-matter of the claims was in public use and on sale more than two years prior to the filing of the application, and the second finally rejected thirteen claims of the Bertram application, filed May 14, 1931, for a wood heel-making machine. The rejection was solely on the ground that the subject-matter of the claims had been in public use and also on sale more than two years prior to the filing of the Bertram application.

Bertram, as junior party, had been in an interference proceeding in the Patent Office with Walter C. Brooks and John W. Staples. The Brooks and Staples application had been filed October 7, 1929. Ten of the thirteen claims at bar were there involved. Priority of invention was awarded to Bertram, and Brooks and Staples did not appeal. Subsequently, a public use proceeding was instituted against Bertram for the reason that the proofs presented by Brooks and Staples in the interference proceedings were believed to show prima facie that the invention defined in the Bertram claims was in public use and on sale in the United States for more than two years prior to Bertram's filing date. Further proofs were taken. The Primary Examiner then held that the Brooks and Staples activities established both a case of "public use" and a case of "on sale" against Bertram. Upon appeal, the Board of Appeals affirmed this decision. Thereafter, the Primary Examiner, ex parte, finally rejected the thirteen claims here involved, and his decision was affirmed by the Board for the reasons stated in its decision in the public use proceeding.

Attention is here called to the fact that the critical date from which the two-year period started to run is May 14, 1929.

The invention involved in the interference and that defined by the claims at bar relates to a machine for cutting a concave surface on the topmost or attaching face of a shoe heel. In prior practice, this operation had been carried out by hand or by the use of machinery which did not give satisfactory results. Since there is no question about the nature of the invention, it will not be necessary to quote the claims or further discuss the features of the machine involved in appellant's application or the one which is alleged to have been used by Brooks and Staples more than two years prior to the filing date of Bertram.

There was much testimony taken in the two proceedings referred to, but it is agreed that there is little, if any, conflict in the testimony and that there is no issue raised as to what the testimony shows. The sole question presented is one of law and involves only the ascertainment of whether or not the activities of Brooks and Staples prior to the Bertram filing date show a "public use" or "on sale" for more than two years prior to May 14, 1931, within the meaning of section 4886 of the Revised Statutes, the pertinent provisions of which may be presented in the following deleted form:

Section 4886, as amended [U.S.C., title 35, § 31, 35 U.S.C.A. § 31]. "Any person who has invented or discovered any new and useful * * * machine * * * not in public use or on sale in this country for more than two years prior to his application * * * may * * * obtain a patent therefor."

In view of our conclusion, it will not be necessary for us to consider the question as to whether or not the record shows that the invention was "on sale" prior to

836

the critical date except in so far as such evidence may have a bearing upon the question which we are here called upon to decide, to wit, Was the invention in "public use" for more than two years prior to the filing of the Bertram application?

The testimony, we think, clearly establishes the fact that the machine of Brooks and Staples as it existed and as it was operated prior to the critical period was a completed invention. It performed the functions for which it was intended, and we do not regard it as important to consider minor improvements which might have been made. subsequently. The new improved machine before the critical date was successfully operated in producing a new and novel result in the manufacture of shoe heels for which it was designed, and for the purpose of demonstrating that it was a completed and saleable invention. It had clearly passed the experimental stage.

The demonstrations, made by Brooks and Staples, were made to people who were invited to see the machine and its operation for the purpose of inducing such persons to enter into contracts of sale of machines like the one operated which were thereafter to be built. There was no pledge of secrecy and the exhibitions were not private or secret and may be regarded as public in character. As a result of the demonstrations and the negotiations between Brooks and Staples and prospective purchasers, two contracts of sale were made before the critical date. It is stated that delivery was not made until long after the critical period and that prior to the critical period Brooks and Staples had no machine except the one operated which could have been sold. The record shows that in both instances part payments by the machines purchasers were made. One of the sales contracts was in writing and the other verbal. One of the prospective purchasers brought with him a basket of blank shoe heels. These were operated upon in his presence to his entire satisfaction and at that time he entered into a contract to purchase a machine and partly paid for the same. The record is not clear what final disposition was made of the heels so operated upon and, under the circumstances of this case, we do not regard this fact as important. The record abundantly supports the conclusion that the demonstration was not made for the purpose of discovering or curing defects in the machine or to experiment with the view of further improving the same. The demonstrations were made by Brooks and Staples, who were machine builders and not dealers in shoes or shoe heels, in that line of their business which involved the sale of the machines they made.

The Board of Appeals, in affirming the decision of the Primary Examiner in rejecting appellant's claims, directed attention to the reasons stated in its decision in the said interference proceeding.

Concerning the contentions of the appellant and the Board's view of the law applicable to the facts in this case, the Board said:

"Appellant has argued at considerable length and cited numerous cases in support of his contention, that a test use for purposes of reduction to practice is not a public use and as we are thoroughly in accord with this view, it is unnecessary, we believe, to enter into a discussion of this aspect of the situation. While the examiner relied upon the demonstration during which orders were taken as a completion of the reduction to practice, it is entirely possible that the party Brooks and Staples had completed a reduction at an earlier date. However, whether this be true is not deemed material as there appears to be no dispute but that the so-called experimental machine was demonstrated before prospective customers and that orders were taken to build a similar machine. There also appears to be no dispute but that the demonstration machine was capable of performing its intended function and that, while it perhaps was not in perfected condition, it probably could have been sold and was capable of use to concave heels which could have been employed commercially.

"We have carefully considered the decisions relied upon by the parties and while there may be some dicta which may be argued as pertinent to this situation, we have been unable to discover any decision where the facts are the same.

"It is our view that, even if the operation relied upon to establish public use must also be relied upon for a reduction to practice, just as soon as the party demonstrating or testing the machine offered to take orders for similar machines, it is to be presumed that the operation ceased to be merely experimental or for reduction to practice purposes and became use of another nature. Where a use is public, it is believed that the law regards it either as ex-

perimental or public use as we know of no authority for a third use, to be regarded as a 'demonstration use,' and which is neither of the other two.

"Perhaps the following excerpt from the decision, Smith & Griggs Mfg. Co. v. Sprague, 123 U.S. 249, 8 S.Ct. 122, 126, 31 L.Ed. 141, referred to in appellant's brief, is the clearest statement of the law:

"'A use by the inventor, for the purpose of testing the machine, in order by experiment to devise additional means for perfecting the success of its operation, is admissible; and where, as incident to such use, the product of its operation is disposed of by sale, such profit from its use does not change its character; but where the use is mainly for the purposes of trade and profit, and the experiment is merely incidental to that, the principle and not the incident, must give character to its use. The thing implied as excepted out of the prohibition of the statute is a use which may be properly characterized as substantially for the purposes of experiment.'"

"We believe in this instance that the demonstration was mainly for purposes of trade and profit and that it constituted a bar to the grant of a patent to appellant."

The chief contention of appellant is, we think, embodied in the following quotation from his brief:

"* * * the unquestionable fact stands out most clearly that so far as concerns any so-called 'use' that was made of said machine, *such 'use' was purely and wholly experimental,* as distinguished from a commercial or substantial use such as would constitute a bar within the meaning of the two years public use provision of the statute and the decisions pertaining thereto. In fact, it is overstating the matter to call what was done with this machine at that time a 'use' of any kind, for the sporadic operation of the machine was not for the purpose of *using* it, in any proper sense, the machine having been operated merely for test purposes and to show others how it worked. * * *

"Undeniably the operation of this machine to concave a few heels was merely for the purpose of showing interested parties how the machine worked, and there was no question of 'trade and profit' with respect to that particular machine, or with respect to the operation thereof, or the product produced by that operation. Clearly, the mere fact that Brooks and Staples, by means of such operation of the machine, hoped to, and actually did, induce some heel manufacturers to place orders for similar but improved machines to be subsequently built, does not in any way change the character of such operation of the machine, or transform what was plainly a mere exhibition and demonstration of the machine into a 'use' within the public use provision of the statute."

It will be noticed that the appellant contends that a demonstration use, such as that now under consideration, is not a use within the meaning of the statute. We have carefully read all the authorities cited and many others and we cannot conclude that the Board was in error when it stated: "Where a use is public, it is believed that the law regards it either as experimental or public use as we know of no authority for a third use, to be regarded as a 'demonstration use,' and which is neither of the other two." The demonstration use for the purpose of making sales under the circumstances such as prevailed here, implies that the invention had been completed by reduction to practice and that the use was not for the purpose of improving the machine so as to complete the invention. We think that it was a use in the business of the users. It was a use in which the public became advised of the utility of the invention at a period more than two years before Bertram asked for his reward.

While there are no authorities which involve the exact state of facts or the exact question of law here under consideration, there are pertinent authorities which, in principle, suggest the correctness of the decision of the Board. Questions involving the public use of an invention have been before the courts of this country on many occasions during the last hundred years. In Shaw v. Cooper, 7 Pet. 292, 321, 322, 8 L.Ed. 689, the court said: "A strict construction of the act, as regards the public use of an invention, before it is presented, is not only required by its letter and spirit, but also by sound policy. A term of fourteen years was deemed sufficient for the enjoyment of an exclusive right of an invention by the inventor; but if he may delay an application for his patent, at pleasure, although his invention be carried into public use, he may extend the period beyond what the law intended to give him."

A later decision, and the most pertinent one we have found, was cited by the Board of Appeals—Smith & Griggs Manufac-

turing Company v. Sprague, 123 U.S. 249, 8 S.Ct. 122, 125, 31 L.Ed. 141. While that case involved a use of an invented machine for the manufacture of the goods which appellee sold in his established business, it was concerned directly with the question as to whether or not the use was experimental. In discussing this use, the court said:

"And if, without the use of the combinations contained in the excluded claims, the complainant had a machine practically useful for the purpose for which it was designed, which could be used with commercial success as superior to modes of manufacture previously in use, and which, in fact, he did so use for profit in the ordinary course and conduct of his business, and for the purpose of a successful prosecution of that business, it can hardly be said with propriety that such use was merely experimental, although during the period of its operation he was also engaged in the invention of improvements by which he hoped and expected to make it more valuable and useful.

A use by the inventor, for the purpose of testing the machine, in order by experiment to devise additional means for perfecting the success of its operation, is admissible; and where, as incident to such use, the product of its operation is disposed of by sale, such profit from its use does not change its character; but where the use is mainly for the purposes of trade and profit, and the experiment is merely incidental to that, the principle, and not the incident, must give character to its use. *The thing implied as excepted out of the prohibition of the statute is a use which may be properly characterized as substantially for the purposes of experiment. Where the substantial use is not for that purpose, but is otherwise public, and for more than two years prior to the application, it comes within the prohibition.* (Italics ours.)"

We have italicized certain very significant language which, in substance, says that if there is a substantial use not for the purpose of experimentation, such use falls within the prohibition. It is true that in that case the use was said to be "mainly for the purposes of trade and profit." The Board concluded that the demonstration use here under consideration was mainly for purposes of trade and profit. Without holding that, under the circumstances of this case, the question of trade and profit is a controlling one, we may say that we know of no other motive which Brooks and Staples might have had in demonstrating the machine. It certainly resulted in trade, and presumably resulted in profit. It is true that the said operation of the machine did not (as far as the unquestioned statement of facts shows) produce goods from the handling of which trade and profit flowed, but the machine was operated for the only purpose for which it was intended and trade and profit resulted from such operation.

In view of our conclusion as to public use it is not necessary for us to consider the question as to whether or not the invention was on sale prior to the critical date.

We are in agreement with the conclusion of the Board of Appeals that the record discloses that the invention defined by the claims was in public use for more than two years prior to the application within the meaning of the statute, and that the decision of the Board, affirming that of the Examiner, in rejecting said claims was correct, and should be, and it is, affirmed.

Affirmed.

HATFIELD, Associate Judge, did not participate in this decision.